IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **MARGARETTE DUVERGER,** individually and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> **UNITED REALTY GROUP, INC.**, a Florida corporation, <br><br> *Defendant.* | Case No. 0:25-cv-60378-DMM <br><br> **AMENDED CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

## FIRST AMENDED CLASS ACTION COMPLAINT

This case addresses a disturbing trend whereby real estate brokerages train real estate agents to cold call consumers without consent violating the Telephone Consumer Protection Act ("TCPA"). Plaintiff Margarette Duverger ("Plaintiff Duverger" or "Duverger") brings this Class Action Complaint and Demand for Jury Trial against Defendant United Realty Group, Inc. ("Defendant" or "United Realty Group") to stop the Defendant from violating the TCPA by training its agents to place unsolicited calls and text messages to phone numbers that are registered on the National Do Not Call registry ("DNC"), including calls that were placed after the Defendant was told to stop calling and/or texting. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Duverger, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### PARTIES

1. Plaintiff Duverger is a resident of Miramar, Florida.

1

2. Defendant United Realty Group is a Florida registered corporation located in Plantation, Florida. Defendant United Realty Group conducts business throughout this District and throughout Florida, Texas and North Carolina.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because the Defendant is located in this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant is located in this District and directed its wrongful conduct from here to Plaintiff who resides in this District.

## INTRODUCTION

6. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 4.7 billion robocalls were placed in November 2024 alone, at a rate of 157.6 million per day. www.robocallindex.com (last visited December 25, 2024).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

## COMMON ALLEGATIONS

14. Defendant United Realty Group is a real estate brokerage with over 3,500 agents and 22 branch locations located throughout Florida, and in San Antonio, Texas and Greensboro, North Carolina.[3]

15. United Realty Group provides offices, support, technology and ongoing training to its real estate agents:



16. United Realty Group generates revenue from its real estate agents by charging a $299 fee per transaction.

17. In addition, United Realty Group is affiliated with South Florida Title Associates who shares office locations with the Defendant and who also shares corporate ownership. Upon information and belief, United Realty Group earns revenue through South Florida Title Associates.[5]

---

[3] https://www.urgfl.com/
[4] https://getbrokerkit.com/t/united-realty-group-1
[5] https://www.urgfl.com/south-florida-title-associates/

18. United Realty Group has a vested interest in the success of its real estate agents, as those agents generate revenue for the corporation.

**UNITED REALTY GROUP TRAINS ITS AGENTS TO ENGAGE IN COLD CALLING TO GENERATE BUSINESS**

19. United Realty Group hosts regular training sessions for its real estate agents.

20. United Realty Group hosts a training session – Lead Generation & CRM Training for its real estate agents.

21. These training events are held regularly, throughout different United Realty Group office locations. For example:



[6]

---

[6] https://www.instagram.com/p/C0PACbULH0P/?hl=en&img_index=4



22.	This training includes training for real estate agents to generate leads using cold calling.

23.	In a Facebook post about a training session from Lead Generation & CRM Training, United Realty Group shares a photo displaying the table of contents for the training which clearly states cold calling:



---

[7] https://www.instagram.com/p/C2soPmEuUzu/?hl=en

24. The United Realty Group website contains the materials for a presentation used in Defendant's Lead Generation & CRM Training events:





25. The materials reveal a page listing prospecting methods, which include prospecting by phone, consumers with for sale by owner "FSBO" listings, consumers with expired listings and circle prospecting:

---

[8] https://www.urgfl.com/florida-real-estate-agent-resource-trainings/



26. In most cases, consumers with FSBO and expired listings have never provided consent to receive solicitation calls from real estate agents.

27. Circle prospecting entails placing solicitation calls to consumers to let them know about properties that have either been listed recently, or properties that have been sold within a neighborhood or geographic area to determine if the consumer would like to list their property for sale.

28. FSBO consumers, consumers with expired listings and consumers that are contacted through circle prospecting are all examples of cold calling.

29. As a result of the above training, United Realty Group real estate agents have listed cold calling as a strength in working for the Defendant. For example:

---

[9] https://drive.google.com/file/d/15ofGd6qRMgVP1q5hRsXGqnV2uCLsfSMT/view



[10]

30.     As a result of the training that is provided by United Realty Group, consumers are receiving unsolicited calls and text messages, despite having their phone number's registered on the DNC, as per Plaintiff's experience.

31.     United Realty Group profits from the unlawful telemarketing activities that resulted in the filing of this Complaint.

32.     In response to these calls and text messages, Plaintiff Duverger brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

**PLAINTIFF DUVERGER' ALLEGATIONS**

33.     Plaintiff Duverger is the sole owner and exclusive user of her cell phone number ending in 9074.

---

[10] https://www.linkedin.com/in/tony-quaranti-163b479/

9

34. Plaintiff Duverger has owned her cell phone number for over 10 years.

35. Plaintiff Duverger registered her cell phone number on the DNC on October 10, 2006.

36. Plaintiff Duverger uses her cell phone number for personal use only as one would use a landline telephone number in a home.

37. Plaintiff Duverger uses her cell phone number primarily to communicate with friends and family. It is also used to schedule personal appointments and for other household needs.

38. Plaintiff Duverger pays for her cell phone plan. It is not reimbursed by a business.

39. Plaintiff Duverger has never had her cell phone number associated with a business.

40. This phone number is not used in any business or marketing materials.

41. Plaintiff Duverger has never listed her cell phone number publicly as a business contact number.

42. On October 4, 2024 at 12:56 PM, Plaintiff Duverger received 2 back-to-back calls to her cell phone from 954-799-5856.

43. Plaintiff Duverger did not answer these calls.

44. 954-799-5856 is owned/operated by Juan Urbina, Jr., a United Realty Group Broker Associate.[11]

45. On October 7, 2024 at 7:16 PM, Plaintiff Duverger received a text message to her cell phone from 833-657-2861 soliciting real estate services:

---

[11] Based on an investigation conducted by Plaintiff's attorneys.

10



46.     As per the above, the text message was sent by Urbina who directs Plaintiff to visit findyourhome123now.com.

47.     Findyourhome123now.com shows that Urbina is a Broker Associate for United Realty Group:



11

48. On October 7, 2024 at 7:17 PM, Plaintiff Duverger received a 2ⁿᵈ text message to her cell phone from 833-657-2861:

> Broker Associate, Juan Urbina Jr. & Administrator, Mr. Francis
> Acquisition & Sales
> Cell Direct 305 753 7393
> Team Number: 954 367-9316
> 7:17 PM

49. Based on the above, the intention in calling Plaintiff Duverger was for Urbina to solicit real estate services for which Urbina and United Realty Group would receive a commission.

50. On December 24, 2024, Plaintiff Duverger spoke to a United Realty Group employee and told them that she does not watch any more calls/texts to her cell phone.

51. Notwithstanding, on April 7, 2025 at 6:34 PM, Plaintiff Duverger received an unsolicited call to her cell phone for the purpose of offering her United Realty Group's realty services which would require her to pay a fee to United Realty Group from Peter Rodriguez, a United Realty Group employee:[12]

---

[12] Based on an investigation conducted by Plaintiff's attorneys



[13]

52. The unauthorized solicitation calls and text messages that Plaintiff received from or on behalf of Defendant have harmed Plaintiff Duverger in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

53. Seeking redress for these injuries, Plaintiff Duverger, on behalf of herself and a Class of similarly situated individuals, brings suit under the TCPA.

---

[13] https://www.linkedin.com/in/peter-rodriguez-bb277153/

## CLASS ALLEGATIONS

54. Plaintiff Duverger brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant United Realty Group called and/or texted more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the person requested that they stop calling/texting.

55. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Duverger anticipates the need to amend the Class definition following appropriate discovery.

56. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

57. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(b) whether the calls and text messages constitute a violation of the TCPA;

(c) whether United Realty Group is vicariously liable for its agents' calls and text messages;

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

58. **Adequate Representation**: Plaintiff Duverger will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Duverger has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Duverger and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Duverger nor her counsel have any interest adverse to the Class.

59. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Duverger. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from

Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Duverger and the Internal Do Not Call Class)**

60. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

61. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the

16

consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

62. Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

63. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

64. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

17

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling and texting activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Duverger requests a jury trial.

**MARGARETTE DUVERGER**, individually and on behalf of all others similarly situated,

DATED this 14th day of May, 2025.

By: */s/ Avi R. Kaufman*
Avi R. Kaufman
kaufman@kaufmanpa.com
**KAUFMAN P.A.**
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

Stefan Coleman
**Coleman PLLC**
18117 Biscayne Blvd, Suite 4152
Miami, FL 33160

        law@stefancoleman.com
        Telephone: (877) 333-9427


        *Attorneys for Plaintiff and the putative Class*